FILED

-2 FEB 01 PM 2: 27

DISTR          UTAH

BY:

RAYMOND J. ETCHEVERRY (1010)
DAVID G. MANGUM (4085)
MARK A. GLICK (6093)
CATHERINE AGNOLI (6161)
PARSONS BEHLE & LATIMER
One Utah Center
201 South Main Street, Suite 1800
Post Office Box 45898
Salt Lake City, Utah  84145-0898
Telephone: (801) 532-1234
Facsimile: (801) 536-6111

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| KENNECOTT UTAH COPPER CORPORATION, a Delaware Corporation, | **FIRST AMENDED VERIFIED COMPLAINT TO ENJOIN VIOLATION OF THE CLAYTON ACT** |
| Plaintiff, | |
| vs. | |
| NUCOR CORPORATION, a Delaware Corporation; GS INDUSTRIES, INC., a Delaware Corporation; GS INDUSTRIES dba GST STEEL COMPANY, a Delaware Corporation, Moly-Cop Chile, S.A. | Judge Ted Stewart 2:01CV0062 ST |
| Defendants. | |

Plaintiff Kennecott Utah Copper Corporation brings this action against Defendants Nucor

Corporation, GS Industries, Inc.,  GST Steel Co. and Moly-Cop Chile, S.A. pursuant to Sections

7 and 16 of the Clayton Act (15 U.S.C. §§ 18 & 26) to obtain equitable relief in order to prevent

and restrain a violation of the Section 7 of the Clayton Act, and alleges as follows:



## NATURE OF THE ACTION

1.      Plaintiff Kennecott Utah Copper Corporation, ("Kennecott") is a Delaware corporation existing under the laws of the State of Utah, having its office and principal place of business at 8315 West 3595 South, Magna, Utah, 84044. Kennecott brings this antitrust action to prevent the proposed acquisition by Defendants GS Industries, Inc., GST Steel Co. and Moly-Cop Chile, S.A. (collectively "GSI") of certain manufacturing assets of Defendant Nucor Corp. (the "Nucor Assets") that are used to make grinding media, specifically large forged steel grinding balls with sizes of five to six inches in diameter ("Large Forged Steel Grinding Balls"), used by the mining industry.

2.      GSI is a leading supplier of Large Forged Steel Grinding Balls to the mining industry in the United States. It manufactures Large Forged Steel Grinding Balls at several of its facilities throughout the world, including at its facility in Kansas City, Missouri.

3.      After GSI's acquisition of the Nucor Assets, GSI will own the only manufacturing facilities in the United States currently capable of manufacturing Large Forged Steel Grinding Balls. The proposed acquisition of the Nucor Assets, if consummated, will substantially lessen competition in the provision of Large Forged Steel Grinding Balls to the U.S. mining industry.

## DEFENDANTS AND THE PROPOSED ACQUISTION

4.      Upon information and belief, Defendant Nucor Corporation ("Nucor") is a Delaware corporation with its principal place of business located in the State of Utah at 1875 West Highway 13, Brigham City, Utah  84302.

5.     Defendant Nucor has manufactured Large Forged Steel Grinding Balls solely through its grinding ball division located in Utah.

6.     Nucor has stated in SEC filings that its grinding ball business constitutes a very small portion of its overall business, which is focused manufacturing steel for building construction.  Nucor is traded on the NYSE, and, in 1999, had net sales in excess of $4 billion.

7.     Upon information and belief, Defendant GS Industries, Inc. is a Delaware corporation with its principal place of business at 1901 Roxborough Road, Suite 200, Charlotte, North Carolina 28211.

8.     Upon information and belief, Defendant GS Industries, Inc. dba GST Steel Company is a Delaware corporation with its principal place of business at 7000 Roberts Street, Kansas City, Missouri 64125.

9.     Upon information and belief, Defendant Moly-Cop Chile, S.A. is a Chilean corporation with its principal place of business at Av. Pedro de Valvivia 0168 Santiago, Chile .

10.     GSI also manufactures Large Forged Grinding Steel Balls through the entity referred to as GST Steel Co. and Moly-Cop Chile, S.A.  Grinding ball production is a primary business for GSI in the United States.

11.     Other than Nucor and GSI, there are no other suppliers of Large Forged Steel Grinding Balls in the United States, and there are no potential suppliers of Large Forged Steel Grinding Balls that could produce a viable product within two years or even longer.

12.     Kennecott indirectly received notice of GSI's proposed acquisition from Defendant Nucor by a letter, which stated, "as of February 15, 2001, it [Nucor] will no longer be manufacturing grinding balls, as a result of selling its grinding ball manufacturing equipment to

the GS Industries Group ('GST Steel')." (Ex. A., Letter from Nucor Grinding Ball Division to Kennecott Greens Creek dated December 29, 2000.)

13.     Additionally, Kennecott has recently been informed that, on or about December 29, 2000 GSI and/or Moly-Cop Chile, S.A., a subsidiary of GS Industries, Inc., and Nucor documented the sale of the Nucor Assets, and that Nucor has received payment of approximately $4 million for the Nucor Assets.  However, upon information and belief, GSI has not taken possession of the Nucor Assets and they remain in Nucor's possession at its Utah facilities.

14.     Further, upon information and belief, GSI may take possession of the Nucor Assets at any time, and, once GSI has possession of the Nucor Assets it intends to export them to Chile.

15.     Upon information and belief, Nucor has not sought to obtain an alternative buyer that will maintain competition in the United States.

## JURISDICTION AND VENUE

16.     This action is brought pursuant to Sections 7 and 16 of the Clayton Act (15 U.S.C. § § 18 and 26) to secure injunctive relief.  Federal Question jurisdiction over this action is based upon 28 U.S.C. § 1331.

17.     Defendant Nucor resides within this District within the meaning of 28 U.S.C. § 1391(c).  Thus, venue is proper pursuant to 28 U.S.C. § 1391(b)(1).  Venue is also proper pursuant to 15 U.S.C. § 22.

18.     Venue is proper in this District pursuant to 15 U.S.C. § 22 in that GS Industries, Inc. is subject to personal jurisdiction in this District as a result of, among other things, its

purposeful shipment of product into Utah through an established distribution channel, and the maintenance of product inventory in Utah.

19.     Venue is proper in this District pursuant to 15 U.S.C. § 22 in that GS Industries, Inc. dba GST Steel Company is subject to personal jurisdiction in this District as a result of, among other things, its purposeful shipment of product into Utah through an established distribution channel, and the maintenance of product inventory in Utah.

20.     Venue is proper in this District pursuant 28 U.S.C. § 1391(d) in that Moly-Cop Chile, S.A. is an alien and may be sued in any district.

## NATURE OF TRADE & COMMERCE

21.     Both Defendants Nucor and GSI manufacture Large Forged Steel Grinding Balls that are used by the mining industry.  Large Forged Steel Grinding Balls are one type of grinding media, such as grinding balls and rods, that are used in the milling process of various ores. Grinding media are placed inside large rotating mills to grind semi-crushed rock, principally in the processing of copper, iron, and gold.  As the grinding media are mixed against the semi-crushed rock they are consumed (*i.e.,* worn down) and must be replaced by new media on an on-going basis.  Therefore, grinding media is an essential component in the ore-mining process and represents a significant cost in processing.

22.     Grinding media have specific qualities and characteristics that make them more or less suitable for use in certain types of mills and for processing certain types of ore.  Large Forged Steel Grinding Balls are an essential component in the processing of ore in semi-

autogeneous grinding mills ("SAG Mills").  SAG Mills, like those owned by Kennecott, require the exclusive use of Large Forged Steel Grinding Balls.

23.     Kennecott cannot use cast steel balls or balls composed of other materials in its SAG Mills because they are too soft and wear down or break too quickly.  Grinding balls of less than five inches cannot be used because they cause extreme efficiency losses in the SAG Milling process, making it infeasible to switch to smaller ball sizes.  Currently, Kennecott uses only a five and one-quarter inch forged steel grinding ball because there are no current producers of five and one-half or six inch forged steel grinding balls.  GSI and Nucor are the only producers of five and one quarter inch forged steel grinding balls, and the only potential producers of larger sized forged steel grinding balls for several years or more.

24.     SAG Mills are state of the art facilities for milling ores like copper and gold because their production efficiencies far exceed the next best milling process.  Because of these efficiencies, Kennecott cannot substitute non-SAG Mill processes in its facilities except at great expense.

25.     Upon information and belief, GSI has priced its Large Forged Steel Grinding Balls differently to different customers and will continue to have this ability after the acquisition.

26.     Upon information and belief, Nucor required at least four years to develop a manufacturing process that produced a viable Large Forged Steel Grinding Balls product.  Prior to Nucor's entry into the market, Kennecott paid much higher prices for Large Forged Steel Grinding Balls from GSI.  After Nucor entered the market, the price of large grinding balls decreased.

27.     Kennecott cannot import Large Forged Steel Grinding Balls from the few producers located outside the U.S. because transportation costs are prohibitively expensive, and the quality of foreign Large Forged Steel Grinding Balls are also lower.

28.     Producers of grinding balls of less than 5 inches in diameter in the United States cannot substitute in production to producing large forged grinding balls except at prohibitively expensive costs and a lengthy process of development, testing and equipment acquisition.

29.     Barriers to *de novo* entry into the market for Large Forged Steel Grinding Balls are high:

(a)     The manufacturing of large grinding balls requires a large steel-based infrastructure.  The manufacturing base includes raw material sourcing through final product manufacturing.  Steel plants in the U.S. that are currently producing grinding balls are typically mini-mills processing between 500,000 to 1.5 million of raw materials into finished and semi-finished products.

(b)     To produce Large Forged Steel Grinding Balls a specially designed forging machine, called a "horizontal continuous upsetter," is normally used in conjunction with other equipment.  In one step these machines cut a hot slug from the original bar and change it from a cylindrical slug into a spherical grinding ball.  These special forging machines are not commercially available and the last one produced was made in the 1960's.  Although vertical presses and other types of forging equipment can forge grinding balls, the slower speeds of forging are not economic.

30.     Since late 1999, Kennecott and GSI have been negotiating a long-term contract for the provision of Large Forged Steel Grinding Balls to Kennecott.

31.    Recently, and subsequent to the announcement of its proposed acquisition of the Nucor Assets, GSI advised Kennecott that it wanted to schedule a "high-level" meeting to re-discuss the terms under which GSI would provide Large Forged Steel Grinding Balls to Kennecott, including an upward reexamination of the already agreed upon prices and the addition of a natural gas surcharge to the price.

32.    Further, during the last week of January 2001, GSI also advised Kennecott that it intends to raise the price of its Large Forged Steel Grinding Balls to Kennecott by approximately 20%.

## RELEVANT MARKETS & COMPETITIVE HARM

33.    The relevant product market is comprised of manufacturers capable of producing Large Forged Steel Grinding Balls.  There are no cost effective alternatives for SAG Mills.  If after the acquisition, GSI raised the price of Large Forged Steel Grinding Balls by a small but significant amount, a sufficient number of consumers employing SAG Mills of sufficient size could not switch away from its product to make that price increase unprofitable.

34.    The relevant geographic market is the United States because SAG Mill consumers located in the United States cannot cost effectively obtain Large Forged Steel Grinding Balls from outside the United States.

35.    Smaller relevant geographic markets may also exist because GSI has the ability to price discriminate between its SAG Mill customers.

36.    The relevant market for the provision of Large Forged Steel Grinding Balls is highly concentrated.  GSI is the largest provider of Large Forged Steel Grinding Balls, and

Nucor is its only competitor in this market.  Hence, if GSI is permitted to acquire the Nucor Assets, it will possess a complete monopoly over the market for Large Forged Steel Grinding Balls.

37.     GSI's ownership of all manufacturing facilities in the United States capable of producing Large Forged Steel Grinding Balls will substantially lessen competition in the United States.  Because of its ownership of all such manufacturing capabilities, GSI will have the incentive and ability to raise prices, limit the sizes of the grinding balls its produces, or to decrease the quality of its product.

38.     Entry or production substitution into the market for the provision of Large Forged Steel Grinding Balls of five to six inches in diameter to mitigate the competitive harm is unlikely or impossible within the foreseeable future.

39.     Unless restrained, GSI's acquisition of the Nucor Assets will violate Section 7 of the Clayton Act.

40.     Kennecott is a direct purchaser of Large Forged Steel Grinding Balls.  If the GSI's proposed acquisition occurs, Kennecott will be injured by the higher prices, the reduced quality and reduced innovation resulting from the monopoly power of the post-acquisition entity.  Such higher prices, lower quality and decreased innovation constitutes antitrust injury and injury to Kennecott.

## CLAIM FOR RELIEF

41.     Unless restrained, the effect of the proposed acquisition of the Nucor Assets by GSI will be to substantially lessen competition in interstate trade and commerce in violation of Section 7 of the Clayton Act in following ways, among others:

(a)     In the United States competition in the sale of Large Forged Steel Grinding Balls will be lessened substantially; and

(b)     In the United States prices for Large Forged Steel Grinding Balls will be higher and the quality of those products will be lower than they would have had the acquisition not taken place.

42.     Unless GSI is enjoined from acquiring the Nucor Assets, Kennecott will suffer irreparable and immediate harm because GSI will acquire all manufacturing capabilities in the United States for producing Large Forged Steel Grinding Balls.  The effect of the acquisition will be to substantially lessen competition in interstate trade and commerce in violation of Section 7 of the Clayton Act in following ways:

(a)     GSI will have the incentive and ability to raise prices;

(b)     GSI will have the incentive and ability to lower quality (and thereby increase consumption); and

(c)     GSI will have the incentive and ability to reduce innovation.

43.     Kennecott is entitled to a preliminary and permanent injunction enjoining GST from acquiring the Nucor Assets.

## REQUESTED RELIEF

Wherefore, Kennecott prays for relief as follows:

1.     Adjudication that GSI's proposed acquisition of the Nucor Assets is a violation of Section 7 of the Clayton Act (15 U.S.C. § 18);

2.     Preliminary and permanent injunctive relief preventing the consummation of the proposed acquisition of the Nucor Assets by GSI;

3.     An award to Kennecott of its attorneys' fees and costs pursuant to Section 16 of the Clayton Act (15 U.S.C. § 26); and

4.     Such other relief as this Court deems just and proper.

DATED this **2nd** day of February 2001.

RAYMOND J. ETCHEVERRY
DAVID G. MANGUM
MARK A. GLICK
CATHERINE AGNOLI

PARSONS BEHLE & LATIMER
ATTORNEYS FOR PLAINTIFF

Plaintiff's Address:
Kennecott Utah Copper Corporation
8315 West 3595 South
Magna, Utah, 84044

381472.2                                          11

## VERIFICATION

STATE OF UTAH                    )
                                 : ss.
COUNTY OF SALT LAKE              )

       I, Dallas Stevens, being first duly sworn and under oath, state that I have read the

foregoing Verified Complaint and know the facts alleged therein to be true of my own

knowledge, information and belief.

       Dated this **2** day of February, 2001.

                                        Dallas Stevens
                                        Procurement Specialist

STATE OF UTAH                    )
                                 : ss.
COUNTY OF SALT LAKE              )

       DALLAS STEVENS, being first duly sworn, says that he is a Procurement Specialist
employed by the Plaintiff in the foregoing action; that he has read the foregoing Verified
Complaint and knows the contents thereof; and that the same is true to his knowledge; except as
to those matters therein stated on information and belief, and as to those matters, he believes the
same to be true and correct.

                                        NOTARY PUBLIC

My Commission Expires:                Residing at:

3 June 2002                       1108 E Creekcove Cir.
                                        Midvale UT 84047



NOTARY PUBLIC
LEON J. RAWLINS
1108 E. Creekcove Circle
Midvale, Utah 84047
My Commission Expires
June 3, 2002
STATE OF UTAH

381472.2                        12

# Exhibits/ Attachments to this document have **not** been scanned.

# Please see the case file.