

Brent O. Hatch (5715)
Mark F. James (5295)
HATCH, JAMES & DODGE, P.C.
10 West Broadway Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
Facsimile:  (801) 363-6666

Attorneys for Moly-Cop Chile, S.A.

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| KENNECOTT UTAH COPPER CORPORATION, )<br>a Delaware Corporation, )<br>  )<br>Plaintiff, )<br>  )<br>vs. )<br>  )<br>NUCOR CORPORATION, GS INDUSTRIES, )<br>INC., GS INDUSTRIES DBA GST STEEL )<br>COMPANY, and MOLY-COP CHILE, S.A., )<br>  )<br>Defendants. ) | **MEMORANDUM IN SUPPORY OF**<br>**MOLY-COP CHILE'S MOTION**<br>**TO QUASH SERVICE OF PROCESS**<br><br><br>Case No. 2:01 CV 0062 TC<br><br>Judge Tena Campbell |

Moly-Cop Chile, S.A. ("Moly-Cop"), without waiving its objections to the Court's

personal jurisdiction over it, respectfully submits this memorandum in Support of its Motion to

Quash Service of Process.

### INTRODUCTION AND FACTUAL BACKGROUND

After Moly-Cop contracted with Defendant Nucor Corporation ("Nucor") to purchase

certain assets from Nucor, Kennecott Utah Copper Corporation ("Kennecott") filed this action.

Originally, Moly-Cop was not named as a defendant to the action.  Subsequently, Kennecott

amended its Complaint to add Moly-Cop as a defendant.



Moly-Cop is a business concern organized and existing under the laws of the Republic of Chile. Its offices and places of business are located in the Republic of Chile, and it has no place of business in the United States. [Affidavit of James E. Sepulveda, attached as Exhibit 2).] Moly-Cop's management personnel speak and routinely do business in the Spanish language, which is the native tongue of Chileans. Moly-Copy's management personnel do not conduct business in the English language and do not have a good working understanding of the English language, and certainly not a sufficient understanding to comprehend the meaning of complex legal documents written in the English language.

Kennecott attempted to effectuate service of process on Moly-Cop by causing a summons and a copy of the "First Amended Verified Complaint to Enjoin Violation of the Clayton Act" (the "Amended Complaint") to be hand-delivered to Moly-Cop's headquarters in Santiago, Chile. A true and correct copy of the Summons and Amended Complaint are attached hereto as Exhibit "3." The Summons and Amended Complaint were not translated into Spanish, and the documents were not served in accordance with the Inter-American Convention on Letters Rogatory, to which Chile and the United States are parties.

Because service of process was not properly effectuated by Kennecott on Moly-Cop, service should be quashed.

## DISCUSSION

Service of the Summons and Amended Complaint on Moly-Cop should be quashed for either of at least two independent reasons. First, Kennecott's attempt to serve Moly-Cop with English-language documents that were not translated into Spanish violates the due process requirements of the Fifth and Fourteenth Amendments of the United States Constitution.

2

Second, in attempting to serve Moly-Cop, Kennecott failed to comply with the Inter-American

Convention on Letters Rogatory, to which Chile and the United States are parties.

**I.     BECAUSE THE ATTEMPTED SERVICE OF PROCESS ON MOLY-COP DOES NOT SATISFY DUE PROCESS REQUIREMENTS, SERVICE SHOULD BE QUASHED.**

To satisfy the due process requirements of the Fifth and Fourteenth Amendments to the

United States Constitution, the method of service of process chosen by a plaintiff must be

reasonably calculated to provide the defendant with actual notice of the pendency of the lawsuit

and of the opportunity to defend.  *See, e.g., Mullane v. Central Hanover Bank & Trust Co.*, 339

U.S. 306, 314 (1950); *Milken v. Meyer*, 311 U.S. 457 (1940).  K. Reisenfeld, "Service of United

States Process Abroad: A Practical Guide to Service Under the Hague Service Convention and the

Federal Rules of Civil Procedure," 24 *Int'l Lawyer* 55, 58 (1990) (hereinafter referred to as

"Reisenfeld").  Because of this due process requirement, courts have held that service of process

papers written in a language different from the defendant's native tongue does not meet

constitutional requirements.  Hence, due process requires that documents which are served be

translated into the defendant's native language.  Reisenfeld at 60.  *See Owen v. Larsen*, 25 Cal.

App.3d 325, 328, 101 Cal. Rptr. 796, 798 (1972).  *See also Shoei Kako Co. v. Superior Court of

San Francisco*, 33 Cal. App.3d 808, 109 Cal. Rptr. 402 (1973) (due process requires documents

served on foreign defendant to be translated into the defendant's native language, unless the

defendant understands or routinely does business in English).

Moly-Cop is a Chilean company.  Its personnel routinely do business in Spanish, not

English, and its personnel in Chile do not understand English sufficient to allow Moly-Cop to

clearly decipher and fully comprehend a complex legal document written in English without the

document being translated into Spanish.  Kennecott's efforts at service of process therefore offend

due process.  This Court should quash the attempted service of the Summons and Amended

Complaint on Moly-Cop in this action.

3

**II.     THE INTER-AMERICAN CONVENTION ON LETTERS ROGATORY
         PROVIDES FOR THE SOLE AND EXCLUSIVE METHOD OF SERVICE OF
         PROCESS BY AMERICAN PLAINTIFFS ON CHILEAN DEFENDANTS.**

A second, independent reason why this Court should quash Kennecott's attempted service on Moly-Cop is that the method of service in this case did not comply with the Inter-American Convention on Letters Rogatory, which provides for the sole and exclusive means of service of process on defendants who reside in countries that are signatories to that Convention, such as Chile. The Convention sets forth several simple, straightforward procedures to properly effectuate service on a party to the Convention. Kennecott made no effort to comply with those requirements.

Transnational litigation has become a significant presence in American courts in the past several decades. See Note: "The Inter-American Convention and Additional Protocol on Letters Rogatory: The Hague Service Convention's 'Country Cousins'?", 36 *Columbia Journal of Transnational Law* 687, 688 (1998) (hereinafter referred to as the "*Columbia Note*"). As transnational commercial transactions have become more common and complex, the need for clear and comprehensible rules regulating the conduct of transnational litigation has greatly increased. *Id.* In the wake of the explosive growth in commercial relationships between the United States and Latin American countries in the past few decades, the United States recognized the pressing need for international treaties regulating civil and commercial litigation between its citizens and the citizens of Latin American countries. *Id.* Accordingly, in 1988, the United States ratified the Inter-American Convention on Letters Rogatory and the Additional Protocol to that Convention. O.A.S.T.S. No. 43, Jan. 30, 1975 (entered into force on Aug. 27, 1988), O.A.S.T.S. No. 56, May 8, 1979 (entered into force on Aug. 27, 1988) __ U.S.T. __, T.I.A.S. No. __, May 8, 1979, Senate Treaty No. 98-27; 98th Cong., 2d Session; 14 I.L.M. 339 (March 1975) (also reprinted in *Martindale-Hubbell Law Directory*, International Law Digests, Selected International Conventions).

The Inter-American Convention and the Additional Protocol established mechanisms by which service of process can be effected on defendants who reside in countries that are

4

signatories to the Convention and the Protocol.[1] *Columbia Note* at 688. [A full and complete copy of the text of the Inter-American Convention and the Additional Protocol is attached hereto as Exhibit 1.]

The Convention and the Additional Protocol, to which the United States and many Latin American countries (including Chile) are signatories, create a uniform system for the service of legal process and the service of other judicial documents among residents of the United States and most Latin American states. *Id.* at 688. This uniform system is in many respects similar to the uniform system created under the Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial Matters (the so-called Hague Service Convention)[2], *Id.* at 688, which was created by and large for North American and European countries.

In *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 700-01 (1988), the United States Supreme Court was faced with the issue whether service of process in U.S. civil litigations in accordance with the procedures specified by the Hague Service Convention is mandatory. That is, the Court faced the question whether an American plaintiff was required to serve a Hague Service Convention defendant with U.S. civil process by the means spelled out in the Hague Service Convention, or whether those means were merely optional. The Supreme Court held that, by virtue of the Supremacy Clause of the United States Constitution, the Hague Service Convention, a treaty of the United States, is the highest law of the land and preempts all inconsistent forms of service of process under the Federal Rules of Civil Procedure and state law. *Id.* at 700-01. In reaching this result, the Supreme Court relied not only on the text of the Hague Service Convention itself, which it held must be "liberally construed," *id.* at 700, but also on the intent of the drafters and the purpose of the treaty. *Id.*

Because the Inter-American Convention is relatively new, the Supreme Court has not yet interpreted it or ruled on whether its provisions are mandatory and exclusive. Nevertheless, in light of the significant similarities between the Hague Service Convention and the Inter-

---

[1] The United States has only ratified the Convention with respect to countries that have adopted both the Convention and the Additional Protocol. Chile has adopted both the Convention and the Additional Protocol.

[2] Opened for signature Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638, 658 U.N.T.S. 163 (also reprinted in *Martindale-Hubbell Law Directory*, International Law Digest, Selected International Conventions, and in 28 U.S.C.A., Annotations to Rule 4 of the Federal Rules of Civil Procedure at 130 ( Supp. 1989).

American Convention on Letters Rogatory and the Additional Protocol, it logically follows that the Supreme Court would rule that its procedures constitute the mandatory and exclusive means of serving process on a Latin American defendant.

The Inter-American Convention was intended by the President of the United States and the United States Department of State to have the same effect as the Hague Service Convention. *See* Inter-American Convention on Letters Rogatory, Jan. 30, 1975, S. Treaty Doc. No. 27, 98th Cong., 2d Session (1984); *Columbia Note* at n.26, indicating that Barbados was the only OAS member state other than the United States that acceded to the Hague Service Convention. *See also* Inter-American Convention, note 14 at Sections I and III (the President's Letter of Transmittal and the State Department's Letter of Submittal assert that the Inter-American Convention is analogous to the Hague Service Convention).

In addition, the United States designed the Additional Protocol to the Inter-American Convention after the Hague Service Convention, so that it would have the same success as the Hague Service Convention. Inter-American Convention, note 14 at Section IV. *See* text accompanying note 27. The United States placed great emphasis and importance on the Additional Protocol by explicitly refusing to enter into the Inter-American Convention with any signatory country that did not sign both the Convention and the Additional Protocol. *See* Inter-American Convention, note 14 and text accompanying note 39. Furthermore, the State Department recognized that "the [Inter-American] Convention and the Additional Protocol establish a treaty-based system of judicial assistance analogous to that which exists among states that are parties to the Hague Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters." Inter-American Convention, note 14 at § III.

Throughout the treaty documents which recommend the  ratification of the Inter-American Convention to the United States Senate, the President and the United States State Department consistently referred to the Hague Service Convention as the "analogous convention already in existence." Inter-American Convention, note 14 at Sections I and III. Moreover, as noted above, the President and the State Department did not merely label the Hague Service Convention as "an analogous treaty" in the Letters of Transmittal and Submittal.  They went

further by drafting the Additional Protocol based on the provisions contained in the Hague Service Convention. Inter-American Convention, note 14 and text accompanying note 26.

The high degree of emphasis place upon, and the continuous comparison to, the Hague Service Convention in the supporting documentation to the Inter-American Convention indicates that the Convention was patterned after the Hague Service Convention. *See Columbia Note* at 711 nn. 122, 123. Accordingly, the rationale of the United States Supreme Court's ruling in *Volkswagenwerk Aktiengesellschaft v. Schlunk*, requiring service of process to comply with the Hague Convention, applies equally to service of process in countries that are parties to the Inter-American Convention and the Additional Protocol.[3]

Because the service of process on Moly-Cop did not comply with the requirements set forth in the Inter-American Convention and the Additional Protocol, it was defective. For this additional reason, service of process should be quashed.

## CONCLUSION

Moly-Cop is a Chilean company that operates in a country where the primary language spoken is Spanish. Due process requirements mandate that the Summons and Amended Complaint that were served on Moly-Cop have been translated into Spanish. They were not. Service, therefore, was defective and should be quashed.

In attempting to serve Moly-Cop, Kennecott failed to comply with the requirements set forth in the Inter-American Convention and the Additional Protocol. As a result, service was defective and, for this additional reason, should be quashed.

DATED this 7th day of March, 2001.

Hatch, James & Dodge

By: _____
Mark F. James
Attorneys for Moly-Cop Chile, S.A.

---

[3] Moreover, the Inter-American Convention is replete with mandatory language (*see, e.g.,* Inter-American Convention, Sections II, IV, and V, which the Supreme Court relied on heavily in its *Schlunk* decision. In addition, Article 15 of the convention, which provides for *alternative* treaty-based and treaty-sanctioned means of effecting service, strongly implies that the treaty was intended and designed to preempt other, non-treaty means of service. Otherwise, Article 15 would be superfluous.

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing to be served on the following in the method indicated this 7th day of March, 2001:

Raymond Etcheverry          (By hand-delivery)
David G. Mangum
Mark A. Glick
Catherine Agnoli
Parsons, Behle & Latimer
One Utah Center
201 South Main Street, Suite 1800
P.O. Box 45898
Salt Lake City, Utah  84145-0898

Clark Waddoups              (By first class mail, postage prepaid)
Stephen E.W. Hale
Parr, Waddoups, Brown, Gee & Loveless
185 South State Street, Suite 1300
Salt Lake City, Utah  84111

Wayne Klein                 (By first class mail, postage prepaid)
Attorney General
160 East 300 South, 5th Floor
Box 140872
Salt Lake City, Utah  84114-0872

# Exhibits/ Attachments to this document have **not** been scanned.

# Please see the case file.